IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| YVES FLORESTAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-128-JJF |
| | ) | |
| GOLDEN HARRINGTON, LLC | ) | |
| a Delaware limited liability company, and | ) | |
| TWENTY-NINE CORP., a | ) | |
| Maryland corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS**

Sheldon N. Sandler (No. 245)
Michael P. Stafford (No. 4461)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6673
Facsimile: (302) 576-3330
Email:  ssandler@ycst.com
Email:  mstafford@ycst.com
Attorneys for Defendant

DATED:  April  2, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..............................................................................................i

TABLE OF AUTHORITIES .......................................................................................ii

NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

SUMMARY OF ARGUMENT ...................................................................................2

STATEMENT OF FACTS ........................................................................................3

ARGUMENT .........................................................................................................4

I.      STANDARD OF REVIEW ...........................................................................4

II.     THE GENERAL ASSEMBLY EXPRESSED ITS INTENT THAT
        THE AMENDMENT TO THE DELAWARE DISCRIMINATION
        STATUTE PREEMPTED THE FIELD AND THAT COMMON
        LAW CLAIMS MAY NO LONGER BE BROUGHT IN
        EMPLOYMENT DISCRIMINATION LAWSUITS. .............................................5

CONCLUSION......................................................................................................7

# TABLE OF AUTHORITIES

<u>Cases</u>

*Conley v. Gibson*,
355 U.S. 41 (1957) ........................................................................................... 4

*D.P. Enter. Inc. v. Bucks County Cmty. Coll.*,
725 F.2d 943 (3d Cir. 1984) ............................................................................ 4

*E.I. DuPont de Nemours and Co. v. Pressman*,
679 A.2d 436 (Del. 1996) ................................................................................ 5

*EEOC v. Avecia, Inc.*,
2005 U.S. App. LEXIS 22157,
(3d Cir. Oct. 13, 2005) ..................................................................................... 5

*Lord v. Souder*,
748 A.2d 393 (Del. 2000) ................................................................................ 5

*Mease v. Wilmington Trust Co.*,
Civ. No. 06-271-SLR,
2007 U.S. Dist. LEXIS 21088,
(D. Del. Mar. 26, 2007) ............................................................................ 5, 6

*Moon v. Del. River & Bay Auth.*,
Civ. No. 05-261-JJF,
2006 U.S. Dist. LEXIS 7101,
(D. Del. Feb. 24, 2006) .................................................................................... 6

*Morse v. Lower Merion Sch. Dist.*,
132 F.3d 902 (3d Cir. 1997) ............................................................................ 4

*Mosley v. Bay Ship Management, Inc.*,
2000 U.S. Dist. LEXIS 20251,
(D.N.J. Dec. 27, 2000) ..................................................................................... 4

*Wilcoxon v. Red Clay Consol. Sch. Dist.*,
437 F. Supp. 2d 235 (D. Del. 2006) ............................................................... 6

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Yves Florestal filed this lawsuit on March 1, 2007 alleging that he was terminated because of his race, sex, and national origin in violation of the Title VII, 42 U.S.C. § 2000e *et seq.*,  and 42 U.S.C. §1981, and that his termination constituted a breach of the Delaware common law implied covenant of good faith and fair dealing. Defendants have filed a motion to dismiss the Delaware common law claim.  This is Defendants' opening brief in support of their motion.

## SUMMARY OF ARGUMENT

1. The Delaware General Assembly has reaffirmed the principle that the statutory discrimination laws have preempted the field and no Delaware common law remedy is available in employment discrimination suits.

## STATEMENT OF FACTS

Plaintiff was formerly an employee of Defendant Golden Harrington, LLC. Complaint ¶ 13.  He was terminated "on or about October 10, 2007," after he "walked off the job..."  Complaint ¶ 18.  At the time Plaintiff "walked off the job" he was employed as a "swing manager" at a restaurant located in Harrington, Delaware.  Complaint ¶ 13. In Count III of this lawsuit, Florestal alleges that his termination violated the common law covenant of good faith and fair dealing.  Complaint, ¶¶ 28-30.

## ARGUMENT

### I.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that the legal sufficiency of a Complaint may be challenged by demonstrating the plaintiff's failure to state a claim upon which relief can be granted.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  When considering a motion to dismiss, the court accepts "as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," viewing them "in the light most favorable to the plaintiff."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a court will accept the plaintiff's factual allegations as true, a motion to dismiss should be granted when "it appears to a certainty that no relief could be granted under any set of facts which could be proved."  *Morse*, 132 F.3d at 906 (quoting *D.P. Enter. Inc. v. Bucks County Cmty. Coll.*, 725 F.2d 943 (3d Cir. 1984)).  In particular, a court should not consider or regard as true "conclusory allegations of law, unsubstantiated conclusions, and/or unwarranted factual inferences." *Id.*, 132 F.3d at 906.  Moreover, in deciding a motion to dismiss, the court may consider the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.  *Mosley v. Bay Ship Management, Inc.*, 2000 U.S. Dist. LEXIS 20251, *10 (D.N.J. Dec. 27, 2000) (citing *Pen. Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993), *cert. denied*, 510 U.S. 1042, 114 S. Ct. 687 (1984)).

**II.    THE GENERAL ASSEMBLY EXPRESSED ITS INTENT THAT THE AMENDMENT TO THE DELAWARE DISCRIMINATION STATUTE PREEMPTED THE FIELD AND THAT COMMON LAW CLAIMS MAY NO LONGER BE BROUGHT IN EMPLOYMENT DISCRIMINATION LAWSUITS.**

It is now well-settled that common law causes of action that run parallel to statutory discrimination claims are no longer viable in Delaware following the comprehensive amendments to Delaware's employment discrimination statute to create a private state-law cause of action.  *EEOC v. Avecia, Inc.*, 2005 U.S. App. LEXIS 22157, *6 (3d Cir. Oct. 13, 2005) (citing *Lord v. Souder*, 748 A.2d 393, 400 (Del. 2000) and *E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 442-44 (Del. 1996)); *see also Mease v. Wilmington Trust Co.*, Civ. No. 06-271-SLR, 2007 U.S. Dist. LEXIS 21088, *5-*7 (D. Del. Mar. 26, 2007).

In *Avecia*, the Third Circuit found that "in 2004 the Delaware legislature amended 19 *Del. C.* § 710 *et seq.*, which prohibits discrimination in employment practices, in order to clarify that this statute was the 'sole remedy' for an aggrieved employee 'to the exclusion of **all other remedies**.'" *Avecia*, 2005 U.S. App. LEXIS 22157 at *7-8 (quoting 19 *Del. C.* § 712(b))(emphasis added).  The Third Circuit pointed out that "the synopsis of the Senate Bill [amending Section 712] expressly states disagreement with the Delaware Supreme Court's decision in *Schuster*, the decision that recognized a[n implied covenant] public policy claim for alleged gender bias:

> This bill confirms that Chapter 7 is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of Labor for review and action. This bill effectively re-establishes the exclusive remedy put in question by the decision in Schuster v. Derocili, 775 A.2d 1029 (2001).

5

*Id*.  In addition, the continued viability of the implied covenant of good faith and fair dealing in employment discrimination cases "has been brought into question by a series of decisions issued by this court, among others."  *Mease*, Civ. No. 06-271-SLR, 2007 U.S. Dist. LEXIS 21088 at *5-6 (citing *Wilcoxon v. Red Clay Consol. Sch. Dist.*, 437 F. Supp. 2d 235, 246-47 (D. Del. 2006); *Moon v. Del. River & Bay Auth.*, Civ. No. 05-261-JJF, 2006 U.S. Dist. LEXIS 7101, *4 (D. Del. Feb. 24, 2006)).

Given the stated policy of the legislative amendments reaffirming the prior rulings on the exclusivity of the statutory remedy, recognition of common law claims that are co-extensive with Plaintiff's statutory discrimination claims is inapposite.  For that reason, Plaintiff's claim under the covenant of good faith and fair dealing must be dismissed.

6

## CONCLUSION

For the foregoing reasons, defendants respectfully request that Count III of the Complaint be dismissed.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/      *Sheldon N. Sandler*

Sheldon N. Sandler, Esquire (No. 0245)
Michael P. Stafford, Esquire (No. 4461)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6673; (302) 571-6553
Facsimile: (302) 576-3330; (302) 576-3470
Email:  ssandler@ycst.com
Email:  mstafford@ycst.com
Attorneys for Defendants

DATED:       April 2, 2007

1 of 8 DOCUMENTS

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; LISA STEPLER v.
AVECIA, INC.; Lisa Stepler, Appellant**

**No. 04-3396**

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

*151 Fed. Appx. 162; 2005 U.S. App. LEXIS 22157*

**July 12, 2005, Argued
October 13, 2005, Filed**

**NOTICE:** [**1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE. Dist. Court Civil Action No. 03-CV-00320. District Judge: The Honorable Susan L. Robinson. *Stepler v. Avecia Inc., 2004 U.S. Dist. LEXIS 14955 (D. Del., July 19, 2004)*

**COUNSEL:** PHILLIP B. BARTOSHESKY (ARGUED), Biggs and Battaglia, Wilmington, Del., Counsel for Appellant.

GINGER D. SCHRODER (ARGUED), Schroder, Joseph & Associates LLP, Buffalo, N.Y.; JENNIFER C. JAUFFRET, Richards, Layton & Finger, Wilmington, DE, Counsel for Appellee.

**JUDGES:** Before: ALITO, BECKER, and GREENBERG, Circuit Judges.

**OPINION:**

[*163] OPINION OF THE COURT

PER CURIAM:

Lisa Stepler, a former laboratory technician for Avecia, Inc. ("Avecia") sued Avecia for retaliation under *Title VII of the Civil Rights Act of 1964*, wrongful termination under Delaware law, and intentional infliction of emotional distress under Delaware law. The District Court dismissed Stepler's claim for intentional infliction of emotional distress and granted summary judgment in favor of Avecia on Stepler's retaliation and wrongful termination claims. We affirm the dismissal [**2] of the claim for the intentional affliction of emotional distress and the entry of summary judgment in favor of Avecia on the wrongful termination claim. However, we reverse the entry of summary judgment in favor of Avecia on the retaliation claim and remand for further proceedings.

I.

Stepler asserts that this case should have been analyzed under the framework of *Price Waterhouse v. Hopkins, 490 U.S. 228, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989).* n1 Under that framework, the "burden of production and the risk of non-persuasion are shifted to the defendant," and the defendant must show "that even if discrimination was a motivating factor in the adverse employment decision, it would have made the same employment decision regardless of its discriminatory animus." *Armbruster v. Unisys Corp., 32 F.3d 768, 778 (3d Cir. 1994).* This framework only applies, however, where the employee can show "*direct evidence* that an illegitimate criterion was a substantial factor in the decision." *Price Waterhouse, 490 U.S. at 276* (O'Connor, J., concurring in the judgment) (emphasis added); see also *Walden v. Georgia-Pacific Corp., 126 F.3d 506, 513 (3d Cir. 1997).* [**3] We have carefully considered the evidence on which Stepler relies in this case, and while the question is close we conclude that she did not meet the "direct evidence" standard.

n1 *42 U.S.C. § 2000e-2(m)* does not reach retaliation claims. *Woodson v. Scott Paper Co., 109 F.3d 913, 934 (3d Cir.)*, cert. denied, *522 U.S. 914, 139 L. Ed. 2d 230, 118 S. Ct. 299 (1997)*.

Stepler's Title VII claims must be analyzed under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*, and its progeny. Under [*164] this framework, Stepler was first required to make out a prima facie case of retaliation by establishing (1) that she engaged in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal link between her protected activity and the adverse employment action. *Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000)*. If Stepler [**4] successfully made out a prima facie case, Avecia had to point to evidence in the summary judgment record that was sufficient, if believed, to support a finding that Stepler was not discharged because of her protected activity. See *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-507, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993)*. If Avecia met this burden, Stepler was required to prove that unlawful retaliation was a determinative cause of her firing. See *McDonnell Douglas, 411 U.S. at 802-803*.

Stepler clearly satisfied the first two prongs of the prima facie case standard. Her complaints about a hostile work environment and retaliation were protected activities, and her firing by Avecia obviously was an adverse employment action. Whether she proffered sufficient evidence to meet the third prong of the prima facie case standard is less clear due to the gap of almost one year between her initial complaint and her termination, but a gap of this magnitude is not conclusive and can be outweighed by a "pattern of harassment" or a "pattern of antagonism" in the intervening period. See *Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997)*; see also [**5] *Robinson v. Southeastern Pennsylvania Transp. Auth., 982 F.2d 892, 894-95 (3d Cir. 1993)*. A reasonable jury considering the evidence in the light most favorable to Stepler -- including Stepler's performance reviews, management's increased scrutiny of her, the tension with her co-workers, the memorandum of April 23, 2001, and the termination letter -- could conclude that there was a causal link between Stepler's protected activities and Avecia's decision to fire her. We thus conclude that Stepler made out a prima facie case.

Avecia's proffered reasons for Stepler's termination were poor work performance and disruptive behavior, but a reasonable jury considering the evidence in the light most favorable to Stepler, and drawing all inferences in Stepler's favor, could conclude otherwise. Particularly noteworthy are the references in both the April 23 memo and the May 4, 2001, termination letter to Stepler's "intense focus upon alleged harassment [and] retaliation." App. 264, 371.

III.

Conversely, there are no issues of fact precluding summary judgment in favor of Avecia on Stepler's state law claim for breach of the covenant of good faith and fair dealing.

The general [**6] rule in Delaware is that employees are employed "at will" and may be dismissed at any time without cause. See *Merrill v. Crothall-American, Inc., 606 A.2d 96, 103 (Del. 1992)*. The general rule does not apply, however, in the following four situations:

> (i) where the termination violated public policy;
>
> (ii) where the employer misrepresented an important fact and the employee relied "thereon either to accept a new position or remain in a present one";
>
> (iii) where the employer used its superior bargaining power to deprive an employee
>
> of clearly identifiable compensation related to the employee's past service; and
>
> [*165] (iv) where the employer falsified or manipulated employment records to create fictitious grounds for termination.

*Lord v. Souder, 748 A.2d 393, 400 (Del. 2000)* (citing *E.I. DuPont de Nemours and Co. v. Pressman, 679 A.2d 436, 442-44 (Del. 1996)*). Stepler claims that Avecia's actions fit into either the first or fourth category. She contends that the first category fits because being fired for opposition to sexual harassment and retaliation violates public policy, and she argues that the fourth

[**7] category fits because she was subjected to false criticisms of her work in her performance evaluation, false claims that she was using work time to study, and false claims that she was fired for behavioral and performance issues.

In order to make out a claim of a public policy violation, a plaintiff must satisfy a two-part test: "(i) the employee must assert a public interest recognized by some legislative, administrative or judicial authority and (ii) the employee must occupy a position with responsibility for advancing or sustaining that particular interest." *Lord, 748 A.2d at 401* (citing *Pressman, 679 A.2d at 441-42*). To satisfy the first part, Stepler relies on the Delaware Supreme Court's decision in *Schuster v. Derocili, 775 A.2d 1029 (Del. 2001)*, which recognized a cause of action for breach of the covenant of good faith and fair dealing where the employee alleged that she was terminated following sexual harassment in the workplace. But in 2004 the Delaware legislature amended *19 Del. C. § 710 et seq.*, which prohibits discrimination in employment practices, in order to clarify that this statute [**8] was the "sole remedy" for an aggrieved employee "to the exclusion of all other remedies." *19 Del. C. § 712(b)* (2005). In fact, the synopsis of the Senate Bill expressly states disagreement with the Delaware Supreme Court's decision in Schuster:

> This bill confirms that Chapter 7 is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of Labor for review and action. This bill effectively re-establishes the exclusive remedy put in question by the decision in *Schuster v. Derocili, 775 A.2d 1029 (2001).*

Delaware Bill Summary, 2004 Reg. Sess. S.B. 154. Moreover, when the bill is read in light of the sponsor statement, which "confirms" and "re-establishes" the pre-existing rule "put in question by" Schuster, it is clear that the 2004 Amendment is meant to be retroactive. Thus Stepler has not asserted a recognized public interest, and Avecia's actions do not fit into the first category.

Nor do they fit into the fourth category: falsification or manipulation of employment records to create fictitious grounds for termination. Even if we assume

[**9] that Stepler was subjected to false criticisms of her work performance and false claims that she was using work time to study, there is no evidence that these particular criticisms and claims were the grounds for Stepler's termination. And even if we assume that Avecia falsely claimed that Stepler was fired for behavioral and performance issues, this is not the kind of falsehood specified in the fourth category, which provides that an employer violates the covenant of good faith and fair dealing when it "falsifie[s] or manipulate[s] employment records to create fictitious grounds for termination." *Lord, 748 A.2d at 400*. If the employer did not actually falsify or manipulate employment records, then it does not matter if the employer gave a false rationale for termination. See *Williams v. Caruso, 966 F. Supp. 287, 291 (D. Del. 1997)* ("Nothing in Pressman suggests an employer who gives an employee a false reason for termination [*166] is subject to liability under the implied covenant of good faith and fair dealing. Pressman only held culpable the manufacture of grounds for dismissal, not the statement of a false reason for dismissal.") [**10] (emphasis in original); see also *Geddis v. University of Delaware, 40 Fed. Appx. 650, 654 (3d Cir. 2002)* (unpublished) (noting that the employee did not claim his supervisor "intentionally created 'fictitious negative information' about him in order to get him fired" and thus the conduct at issue did not fit the fourth Pressman category) (quoting *Schuster, 775 A.2d at 1040*).

IV.

Under Delaware law, the general rule is that the worker's compensation administrative process is the exclusive remedy for an employee who suffers a work-related accident causing personal injury or death. See *19 Del. Code Ann. § 2304* (2005). However, the Delaware Supreme Court has held that "claims that involve a true intent by the employer to injure the employee fall outside of the Workers' Compensation Act and remain separately actionable as common law tort claims." *Rafferty v. Hartman Walsh Painting Co., 760 A.2d 157, 159 (Del. 2000)* (emphasis added); see also *Showell v. Langston, 2003 Del. Super. LEXIS 95, No. Civ. A. 02C-01-016, 2003 WL 1387142, at *3 (Del. Super. Mar. 05, 2003)* (citing Rafferty). Thus, "for a complaint [**11] to survive a motion to dismiss, there must be more than a mere allegation that there was an intentional injury; there must be facts alleged which, if true, show deliberate intent to bring about an injury."

151 Fed. Appx. 162, *166; 2005 U.S. App. LEXIS 22157, **11

*Rafferty, 760 A.2d at 160.* In other words, an employee must allege facts that, if true, would show that the employer intended to injure her. It would not be enough to allege facts showing that the employer intended to do an action and that the worker was injured as a result of that action. Specific intent is required.

Stepler cites Rafferty and argues that her claim for intentional infliction of emotional distress is not barred. In a Memorandum Order of April 28, 2004, the District Court rejected Stepler's argument. We agree with the District Court's analysis.

We therefore affirm the District Court's order of summary judgment in favor of Avecia on Stepler's claims under Delaware law, but we reverse the District Court's order granting summary judgment in favor of Avecia on Stepler's retaliation claim, and we remand the case for further proceedings.

LEXSEE

**CLYDE E. MEASE, JR., Plaintiff, v. WILMINGTON TRUST COMPANY, Defendant.**

**Civ. No. 06-271-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2007 U.S. Dist. LEXIS 21088**

**March 26, 2007, Filed**

**COUNSEL:** [*1] For Clyde E. Mease, Jr., Plaintiff: Gary W. Aber, LEAD ATTORNEY, Aber, Goldlust, Baker & Over, Wilmington, DE.

For Wilmington Trust Company, Defendant: Sheldon N. Sandler, LEAD ATTORNEY, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM ORDER

At Wilmington this 26th day of March, 2007, having reviewed defendant's motion to dismiss, and the papers filed in connection therewith;

IT IS ORDERED that said motion (D.I. 3) is granted, for the reasons that follow:

1. **Background.** On or about December 2, 2004, plaintiff was terminated from his employment with defendant. Plaintiff asserts in the instant litigation that such termination was a pretext for age discrimination, in violation of the "Age Discrimination Employment Act of 1967", as amended, 29 U.S.C. §§ 621 et seq. Plaintiff further asserts that he was terminated in violation of 19 Del. C. § 711 and of the common law of the State of Delaware, more particularly, the covenant of good faith and fair dealing (the "State law claims"). (D.I. 7) Defendant has moved to dismiss the State law [*2] claims.

2. **Standard of review.** In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiffs. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiffs favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiffs cannot demonstrate any set of facts that would entitle them to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The moving party has the burden of persuasion. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

3. **Analysis.** Plaintiff argues that this court has jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367(a), which provides in relevant part that,

> in any civil [*3] action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

A district court may decline to exercise supplemental jurisdiction, however, if "the claim raises a novel or complex issue of State law, . . . or [] in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1), (4).

4. Defendant asserts that the court should decline to exercise supplemental jurisdiction over the State law claims in order to preserve the integrity of Delaware's statutory scheme related to employment discrimination, pursuant to the Delaware Discrimination in Employment Act, 19 Del. C. §§ 710-718 ("the DDEA"). Section 711 of the DDEA identifies as an unlawful employment practice, inter alia, the discharge of an individual because of such individual's "age," defined in § 710(1) as "the age of 40 or more years of age." Section 710(2) [*4] defines the term "charging party" as "any individual . . . who initiates proceedings by the filing of a verified charge of discrimination, and who preserves a cause of action in Superior Court by exhausting the administrative remedies pursuant to the provisions of § 714 of this title." Section 714, in turn, provides the following:

> (a) A charging party may file a civil action in Superior Court, after exhausting the administrative remedies provided herein and receipt of a Delaware Right to Sue Notice acknowledging same.
>
> * * *
>
> (c) The charging party **shall elect a Delaware or federal forum** to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation. A charging party is barred by this **election of remedies** from filing cases in both Superior Court and the federal forum. If the charging party files in Superior Court and in a federal forum, the respondent may file an application to dismiss the Superior Court action under this **election of remedies** provision.

(emphasis added) Finally, § 715(1)(c) provides for "the payment of compensatory damages, including but not limited to [*5] general and special damages, punitive damages when appropriate, not to exceed the damage awards allowable under Title VII of the Civil Right Act of 1964 [42 U.S.C. § 2000e et seq.] . . . ."

5. In addition to his claim under the DDEA, plaintiff has sued defendant for breach of the covenant of good faith and fair dealing. At common law, employment in Delaware is considered at will except where, among other exceptions, the termination violates public policy. See Lord v. Souder, 748 A.2d 393, 400 (Del. 2000). Although the covenant of good faith and fair dealing is still recognized in Delaware, its viability in employment discrimination cases has been brought into question by a series of decisions issued by this court, among others. See, e.g., Wilcoxon v. Red Clay Consol. Sch. Dist., 437 F. Supp. 2d 235, 246-47 (D. Del. 2006); Moon v. Del. River & Bay Auth., No. 05-261, 2006 U.S. Dist. LEXIS 7101, 2006 WL 462551, at *4 (D. Del. Feb. 24, 2006); see also E.E.O.C. v. Avecia, Inc., 151 Fed. App'x 162 (3d Cir. 2005) (amended statute barred a state law claim for breach of the covenant of good faith and fair dealing). In addressing [*6] the DDEA, this court reasoned as follows:

> In 2004, the Delaware legislature amended the statute concerning employment discrimination, stating that the statute was the "sole remedy for claims alleging a violation of this subchapter to the exclusion of all other remedies." 19 Del. C. § 712(b) (2005). The synopsis of the Senate Bill expressly supercedes the [Delaware Supreme Court's] holding in Schuster [v. Derocili, 775 A.2d 1029 (Del. 2001)], stating, "This bill is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of Labor for review and action. This bill effectively re-establishes the exclusive remedy put in question by the decision in Schuster v. Derocili . . . ." Delaware Bill Summary, 2004 Reg. Sess. S.B. 154.

Wilcoxon, 437 F. Supp. 2d at 247.

6. Plaintiff at bar has chosen the federal forum, but wants to take advantage of the State remedies. n1 Given the State of Delaware's legislative mandate expressed in 19 Del. C. § 714(c), however, plaintiff has made an "election of remedies," not [*7] just an election of forum. Accordingly, the court declines to exercise supplemental jurisdiction over plaintiff's State law claims, pursuant to 28 U.S.C. § 1367(c)(4), as the clear language of the DDEA and the case law interpreting it present compelling reasons for such declination. Counts II and III, therefore, are dismissed. n2

2007 U.S. Dist. LEXIS 21088, *7

n1 Plaintiff concedes that the DDEA "provides additional rights and remedies not available under Federal Law," such as the right to recover "general damages, including pain and suffering." (D.I. 5 at 11)

n2 The court notes that plaintiff based all of

his claims on the same set of facts. (D.I. 7)

Sue L. Robinson

United States District Judge

LEXSEE

**HOWARD L. MOON, JR., Plaintiff, v. THE DELAWARE RIVER AND BAY AUTHORITY, Defendant.**

**Civil Action No. 05-261-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2006 U.S. Dist. LEXIS 7101**

**February 24, 2006, Decided**

**COUNSEL:** [*1] Jeffrey K. Martin, Esquire, and Lori A. Brewington, Esquire of MARGOLIS EDELSTEIN, Wilmington, Delaware, Attorneys for Plaintiff.

William W. Bowser, Esquire, and Adria B. Martinelli, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware, Attorneys for Defendant.

**JUDGES:** Joseph J. Farnan, Jr., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Joseph J. Farnan, Jr.

**OPINION:**

### MEMORANDUM OPINION

Joseph J. Farnan Jr.

**Farnan, District Judge.**

Pending before the Court is Defendant's Motion For Partial Judgment On The Pleadings (D.I. 4). Because both parties submitted matters outside the pleadings with their briefing, the Court, pursuant to Fed. R. Civ. P. 12(c), will treat the Motion as one for summary judgment under Rule 56. The Court concludes that Plaintiff has had reasonable opportunity to present all material pertinent to such a motion because Plaintiff's Answering Brief treats Defendant's Motion as one for summary judgment. (see D.I. 8 at 8.) For the reasons discussed, the Court will grant the Motion in part and deny it in part.

### BACKGROUND

At all relevant times, and at least up to the time of filing his Complaint, [*2] Plaintiff was employed by Defendant, The Delaware River and Bay Authority ("DRBA"). Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging four causes of action: (1) retaliation for filing complaints with the EEOC, (2) racial discrimination resulting in deprivation of equal employment opportunities, (3) racial discrimination resulting in failure to promote, and (4) breach of the implied covenant of good faith and fair dealing. As part of his first cause of action, Plaintiff alleges that DRBA "denied Plaintiff the opportunity for promotions despite his qualifications," (D.I. 1 at P48(a)), and "forced Plaintiff to work in a hostile work environment," (Id. at P48(b)). As part of his third cause of action, Plaintiff again alleges that DRBA "denied Plaintiff numerous opportunities for career advancement despite his qualifications." (Id. at P57.) Plaintiff alleges multiple instances in which DRBA unfairly failed to promote him, including failure to promote him to Chief Operating Officer ("COO") in November, 2002.

By its Motion, DRBA requests the Court to dismiss Plaintiff's claims with regard [*3] to hostile work environment and DRBA's failure to promote him to COO, because those claims were not raised in the charges Plaintiff filed with the EEOC. In addition, DRBA contends that Plaintiff's claim with regard to DRBA's failure to promote him to COO is time barred. DRBA further contends that Plaintiff's fourth cause of action, breach of the implied covenant of good faith and fair dealing, is barred by Delaware statute and that the covenant is inapplicable because Plaintiff's employment was not terminated.

## DISCUSSION

### I. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. [*4] Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 200 (3d Cir. 1995). However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). To properly consider all of the evidence without making credibility determinations or weighing the evidence, a "court should give credence to the evidence favoring the [non-moving party] as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Id. at 151.

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. . . . In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). However, the mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary [*5] judgment; there must be enough evidence to enable a jury reasonably to find for the non-moving party on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. Id.

### II. Whether Plaintiff Failed To Exhaust Administrative Remedies With Respect To Certain Claims

DRBA contends that the Court should dismiss Plaintiff's claims of hostile work environment and failure to promote him to COO because Plaintiff did not specifically raise those claims in the charges he filed with the EEOC. (D.I. 5 at 9.) In response, Plaintiff contends that those claims should not be dismissed because they are within the scope of the EEOC charges and a reasonable investigation of the charges would have revealed them. (D.I. 8 at 11.) Plaintiff further contends that he provided information relating to those claims to the EEOC, (Id. at 3, 14), that the EEOC investigator neglected to include that information in the charges, (Id.), and that Plaintiff should not be penalized because of the EEOC's negligent omission, (Id. at 12).

Before initiating [*6] a lawsuit under Title VII, a plaintiff must first file charges of discrimination with the EEOC and be granted a right-to-sue letter. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The purpose of this requirement is to provide the EEOC the chance to "investigate, mediate and take remedial action with respect to a charge of discrimination." Tillman v. The Pepsi Bottling Group, Inc., 2005 U.S. Dist. LEXIS 18891, 17 (D. Del. 2005) (citing Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976)). A court should construe these formalities in a general fashion, because "such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." Love v. Pullman, 404 U.S. 522, 526-27, 92 S. Ct. 616, 30 L. Ed. 2d 679 (1972). Therefore, the ambit of a civil complaint, once a right-to-sue letter is issued by the EEOC, is "'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of a charge of discrimination,' regardless of the actual scope of the EEOC investigation." Ebert v. Office of Information Systems, 1998 U.S. Dist. LEXIS 9100, 12, [*7] (D. Del. 1998) (citing Hicks v. ABT Assoc., Inc., 572 F.2d 960, 966 (3d Cir. 1978) (quoting Ostapowicz v. Johnston Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976), cert denied, 429 U.S. 1041, 97 S. Ct. 741, 50 L. Ed. 2d 753 (1977))).

More specifically, "the relevant test for determining whether plaintiff must exhaust her administrative remedies, therefore, is 'whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.'" Tillman v. The Pepsi Bottling Group, Inc.,

2005 U.S. Dist. LEXIS 18891, 17-18 (D. Del. 2005) (citing Waiters v. Parsons, 729 F.2d 233 (3d Cir. 1984); Ostapowicz, 541 F.2d at 398-99; Flesch v. E. Pa. Psychiatric Inst., 434 F. Supp. 963, 970 (E.D. Pa. 1977); Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984)). In addition, courts have allowed claims not specifically mentioned in the prior EEOC charge "where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint." Ebert v. Office Of Information Systems, 1998 U.S. Dist. LEXIS 9100 (D. Del. 1998) [*8] (citing Howze, 750 F.2d at 1212; Ostapowicz, 541 F.2d at 398-99).

With respect to Plaintiff's claim that DRBA unlawfully discriminated in failing to promote him to COO, the Court concludes that there is a close nexus between that claim and the six incidents of failure to promote specified in Plaintiff's initial EEOC charge. (see D.I. 6 at Al.) The Court further concludes that a reasonable investigation of that charge would have encompassed that claim within its scope. Therefore, the Court will deny DRBA's Motion with respect to Plaintiff's claim that DRBA unlawfully discriminated in failing to promote him to COO.

With respect to Plaintiff's claim of hostile work environment, the Court concludes that there is not a close nexus between that claim and the facts specified in Plaintiff's EEOC charges. Neither of the charges alleges any fact related to claims of a hostile work environment. Nor do they allege any fact from which a hostile work environment could reasonably be inferred. Thus, the Court further concludes that a reasonable investigation of the charges would not have encompassed that claim within its scope. Therefore, the Court will grant [*9] DRBA's Motion with respect to Plaintiff's claim of hostile work environment.

### III. Whether Plaintiff's Claim That DRBA Unlawfully Discriminated In Failing To Promote Him To COO Is Time Barred

DRBA contends that Plaintiff's claim that DRBA unfairly failed to promote him to COO is barred by 42 U.S.C. § 2000e-5(e)(1), which provides that, where, as here, the person filing a Title VII employment discrimination charge has initiated proceedings with a state agency, the charge must be filed with the EEOC within 300 days after the alleged unlawful employment practice occurred. Plaintiff claims that he was unlawfully denied promotion to COO in November, 2002. His initial EEOC charge was filed on April 6, 2004. Plaintiff's Answering Brief (D.I. 8) does not respond to this contention.

Because DRBA's failure to promote Plaintiff to COO occurred more than 300 days before Plaintiff filed his initial EEOC charge, Plaintiff's claim with respect to that incident is time barred unless Plaintiff can demonstrate that DRBA's failure to promote him is part of a continuing violation. Rush v Scott Specialty Gasses, Inc., 113 F.3d 476, 481 (3d Cir. 1997). [*10] "The continuing violation theory allows a 'plaintiff [to] pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant.'" Id. (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)). To do this, Plaintiff must first show that DRBA committed at least one discriminatory act within the 300 day period. Id. at 481 (citing West, 45 F.3d at 754). Plaintiff must also show that the prior discriminatory act was not an isolated incident, but part of a continuing pattern of discrimination. Id. "A plaintiff satisfying these requirements may present evidence and recover damages for the entire continuing violation, and the 300-day filing period will not act as a bar." Id.

Reviewing the evidence and construing all inferences in the light most favorable to Plaintiff, the Court concludes that Plaintiff has adequately alleged that DRBA's failure to promote him to COO was part of a continuing violation. Plaintiff alleges at least five other incidents of failure to promote, four of which are clearly [*11] within the 300 day period. (D.I. 8 at 2-3.) Moreover, the high degree of similarity between the alleged incidents, and their recurring nature demonstrate that DRBA's failure to promote Plaintiff to COO was part of a continuing pattern of discrimination. Therefore, the Court concludes that Plaintiff's claim that DRBA unlawfully failed to promote him to COO is not time barred.

### IV. Whether Plaintiff States A Claim Under The Implied Covenant of Good Faith and Fair Dealing

DRBA contends that Plaintiff's fourth cause of action, that DRBA breached the implied covenant of good faith and fair dealing, should be dismissed because

DRBA never terminated Plaintiff's employment. Plaintiff's Answering Brief (D.I. 8) does not respond to this contention.

Under Delaware law, the covenant of good faith and fair dealing is recognized as a very narrow exception to the presumption of at will employment. E.I. DuPont de Nemours and Co. v. Pressman, 679 A.2d 436, 441 (Del. 1996). In order to bring a valid cause of action under the covenant of good faith and fair dealing, a plaintiff must show that his claim falls into one of four exclusive categories:

> "(i) where the termination [*12] violated public policy; (ii) where the employer misrepresented an important fact and the employee relied 'thereon either to accept a new position or remain in a present one;' (iii) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; and (iv) where the employer falsified or manipulated employment records to create fictitious grounds for termination."

Lord v. Souder, 748 A.2d 393, 400 (Del. 2000) (quoting Pressman, 679 A.2d at 442-44).

Here, Plaintiff cannot contend that his claim falls within category i or iv because DRBA did not terminate Plaintiff's employment. Plaintiff does not contend that his claim falls within category ii or iv. Therefore, the Court concludes that Plaintiff's fourth cause of action, breach of the implied covenant of good faith and fair dealing, fails to state a claim upon which relief can be granted.

In addition, the Delaware Discrimination in Employment Act, 19 Del. C. Chapter 7, precludes Plaintiff from bringing his fourth cause of action. In July, 2004, the Act was amended to provide that "this subchapter shall afford [*13] the sole remedy for claims alleging a violation of this chapter to the exclusion of all other remedies." 19 Del. C. § 712(b). Moreover, the General Assembly's synopsis of the amendments to the Act states that:

> This bill confirms that Chapter 7 is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of Labor for review and action. This bill effectively re-establishes the exclusive remedy put in question by the decision in Schuster v. Derocili, 775 A.2d 1029 (2001).

S.B. 154, 142d Gen. Ass. (Del. 2004). Accordingly, The Court will grant DRBA's Motion with respect to Plaintiff's fourth cause of action.

**CONCLUSION**

In sum, for the reasons discussed, the Court will grant DRBA's Motion with respect to Plaintiff's claim of hostile work environment and Plaintiff's fourth cause of action, breach of the implied covenant of good faith and fair dealing. The Court will deny DRBA's Motion with respect to Plaintiff's claim that DRBA unlawfully failed to promote him to COO in November, 2002.

An appropriate order will be entered.

**ORDER**

At [*14] Wilmington, this 24 day of February, 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Defendant's Motion For Partial Judgment On The Pleadings (D.I. 4) is **GRANTED** with respect to Plaintiff's claim of hostile work environment and Plaintiff's fourth cause of action, breach of the implied covenant of good faith and fair dealing;

2. Defendant's Motion For Partial Judgment On The Pleadings (D.I. 4) is **DENIED** with respect to Plaintiff's claim that Defendant unlawfully failed to promote him to COO in November, 2002.

Joseph J. Farnan Jr.

UNITED STATES DISTRICT JUDGE

LEXSEE

**CHRISTOPHER MOSLEY, PLAINTIFF, v. BAY SHIP MANAGEMENT, INC., ROBERT C. WATTAM and THE UNITED STATES OF AMERICA, DEFENDANTS.**

CIVIL ACTION NO: 00-2306 (JCL)

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

174 F. Supp. 2d 192; 2000 U.S. Dist. LEXIS 20251; 85 Fair Empl. Prac. Cas. (BNA) 101

**December 27, 2000, Decided
December 27, 2000, Filed**

**DISPOSITION:** [**1] Defendants' motion for summary judgment against the plaintiff on Counts One through Six, which subject to the plaintiff's release, granted; and Defendants' motion to dismiss the Seventh Count of plaintiff's complaint, alleging violations of Maryland law, granted; and Defendants' motion to dismiss the Eighth Count of plaintiff's complaint, alleging breach of contract of which he a third-party beneficiary, denied.

**COUNSEL:** For CHRISTOPHER MOSLEY, plaintiff: HENRY ALAN GLUCKSTERN, MAPLEWOOD, NJ.

For BAY SHIP MANAGEMENT, INC., ROBERT C. WATTAM, defendants: KEVIN P. KOPP, KAUFMAN, BORGEEST & RYAN, NEW YORK, NY.

**JUDGES:** John C. Lifland, United States District Judge.

**OPINION BY:** John C. Lifland

**OPINION:**

[*193] **MEMORANDUM AND ORDER**

**LIFLAND, District Judge**

**INTRODUCTION**

Defendants Bay Ship Management, Inc. ("BSM") and Robert C. Wattam ("Wattam") move to dismiss plaintiff's complaint pursuant to Rule 12(b)(6). In their moving papers, the defendants base an argument for dismissal on a release signed by plaintiff [*194] on November 30, 1999. Pursuant to the Court's Order dated October 25, 2000, the defendants' motion for dismissal based on the release will be treated as a motion for [**2] summary judgment. On November 20, 2000, pursuant to the parties' stipulation, the Court ordered dismissal of this action only as to the defendant United States.

For the following reasons, defendants' motion for summary judgment will be granted.

**BACKGROUND**

BSM is a Delaware corporation which does business in New Jersey. The Antares is a ship owned by the United States of America. BSM operates sea vessels, including the Antares, on behalf of the United States for the Department of Navy's Military Sealift Command. (Complaint P 8) The Antares was based in Baltimore. Maryland. (Complaint P 15)

On May 27, 1997, the plaintiff was employed by BSM in the capacity of Chief Steward on the Antares. Plaintiff and his department were responsible for cleaning the ship and operating the laundry services. As Chief Steward, plaintiff reported to the Master of the ship. Wattam was hired as Master of the Antares in mid-January, 1999. The plaintiff alleges that Wattam did not act in a professional or harmonious manner towards the plaintiff based on plaintiff's skin color. Plaintiff alleges that Wattam only engaged in "the barest minimum amount [of conversation] necessary [**3] to

174 F. Supp. 2d 192, *194; 2000 U.S. Dist. LEXIS 20251, **3;
85 Fair Empl. Prac. Cas. (BNA) 101

communicate his orders." (Complaint P 27) According to plaintiff, this lead to "an un-natural, counter-productive, and hostile work environment." (Complaint P 27)

On September 13, 1999, Wattam terminated plaintiff's employment because, according to the defendants, the plaintiff did not carry out the duties that Wattam had ordered the previous weekend. (Complaint P 31) Plaintiff claims that he was wrongfully discharged by Wattam due to racial discrimination. (Complaint P 52)

The record indicates that on September 13, 1999, the plaintiff filed a grievance report which is formally labeled the "Beef Report." In the Beef Report, plaintiff wrote that his "Beef Question" was: "being discharged under racial conditions, being discharged by unfair practice." (Defendant's Motion for Summary Judgment, Exhibit A) Dennis Metz was the official port agent who received the report. He made the following notes: "member filed beef 'report' on the above date, but had no statement or rebuttle [sic] to refute the discharge. Could, at this time give me nothing to work with. Member will prepare a statement so that I may properly handle this grievance." (Defendant's Motion for Summary Judgment, Exhibit [**4] A) On September 14, 1999, the plaintiff made a subsequent statement in which he discussed the abusive attitude of Wattam and explained that "my department always seems to get jumped on about overtime and job performance. Maybe this is the time to mention that my department is all black (African Americans)." (Mosley Affidavit, Exhibit B. p. 4) Plaintiff supplemented this statement on September 17, 1999. (Mosley Affidavit, Exhibit C). In his third statement, plaintiff states: "I feel like Capt. Wattam should be trained in how to deal with Blacks. If his problem with blacks is more deeply rooted than that which can be corrected, then he should not be in the position as Captain of a vessel. Also in this particular day and age to have such prejudice openly displayed is beyond belief." (Mosley Affidavit, Exhibit C. p. 2)

A Port Committee hearing was conducted on November 30, 1999. At the hearing, two representatives of the Seafarers International Union ("SIU"). Steve Ruiz and Dennis Metz, were present. (Mosley Affidavit [*195] P 23) Plaintiff was not represented by counsel. Plaintiff prepared and signed a hand-written agreement on November 30, 1999 which states: "I Christopher Mosley ████████ have [**5] agree [sic] to drop my beef against Bayship Management--that they drop the charges and agree to have quit on mutual consent."

(Mosley Affidavit, Exhibit E) Following the hearing, Mr. Mosley received a copy of Dennis Metz's letter to BSM explaining the November 30, 1999 proceedings: "The Co. agreed to at the time of this meeting, to consider Mr. Mosley's mutual consent with reguard [sic] to his discharge for cause. As a result Bay Ship Mgt. will drop any MIB and/or pending SAB charges. This agreement should conclude the incident/issue. Mr. Mosley as a result, is dropping any and all grievances relative to this matter." (Mosley Affidavit, Exhibit F)

Plaintiff then filed a complaint with the EEOC alleging racial discrimination claims against Wattam. BSM was not specifically named in the complaint to the EEOC. The plaintiff's exact words were: "I was employed as a Merchant Seaman on May 28, 1997, as the Chief Steward on board the USNS Antares. I was discharged from employment on September 13, 1999. I believe I have been discharged because of my race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended." (Mosley Affidavit, Exhibit I) The EEOC sent plaintiff [**6] a right to sue letter dated January 27, 2000.

On May 12, 2000, plaintiff filed a complaint in this Court claiming that defendants' discriminatory practices violated Title VII, 42 U.S.C. § 1981, the New Jersey Law Against Discrimination ("NJLAD") and the Maryland Commission of Human Rights Law. Specifically, the plaintiff's complaint makes the following claims:

1. Plaintiff was wrongfully discriminated against as an African American in violation of Title VII, the New Jersey Law Against Discrimination ("NJLAD") and the Maryland Commission of Human Rights Law. (Complaint P 51-66)

2. Defendants violated 42 U.S.C. § 1981 by creating and maintaining a hostile work environment. (Complaint P 67-77)

3. Plaintiff was wrongfully discharged in violation of Title VII. (Complaint P 78-84)

4. Defendants violated Title VII by creating and maintaining a hostile work environment. (Complaint P 85-89)

5. Defendants violated NJLAD by wrongfully discharging the plaintiff. (Complaint P 90-97)

174 F. Supp. 2d 192, *195; 2000 U.S. Dist. LEXIS 20251, **6;
85 Fair Empl. Prac. Cas. (BNA) 101

6. Defendants violated NJLAD by creating and maintaining a hostile work environment. (Complaint P 98-103)

7. Defendants violated Article 49B by creating and maintaining [**7] a hostile work environment. (Complaint P 104-109)

8. Defendants interfered with the contract between the United States and BSM to which plaintiff is a third-party beneficiary. (Complaint P 110-114)

9. United States negligently delegated and entrusted the operation of the Antares by BSM. (Complaint P 115-117)

## STANDARD OF REVIEW

A. Summary Judgment

Summary judgment eliminates unfounded claims without recourse to a costly and lengthy trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 327, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material [*196] fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. See Celotex, 477 U.S. at 323. A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." Id. at 325. [**8] In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The substantive law determines which facts are material. Id. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. No issue

for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. See id. at 249.

B. Motion to Dismiss under Rule 12(b)(6)

A motion to [*9] dismiss for failure to state a claim serves to test the sufficiency of the complaint. See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In considering such a motion, all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975); Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1988); Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984). A court should not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984); Zynn v. O'Donnell, 688 F.2d 940, 941 (3d Cir. 1982). While a court must assume the alleged facts are true, it is not proper to assume that a plaintiff can prove facts not alleged. See Bishop v. Okidata, Inc., 864 F. Supp. 416, 420 (D.N.J. 1994). [**10] A court may, however, consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See Pension Ben. Guar. Corp. v. White Consol. Ind., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042, 126 L. Ed. 2d 655, 114 S. Ct. 687 (1994).

## DISCUSSION

A. Summary Judgment on Claims Subject to Release

The defendants argue that plaintiff's claims of wrongful discharge in violation of Title VII, 42 U.S.C. § 1981, and NJLAD should be dismissed because plaintiff signed a waiver of his right to bring all wrongful discharge claims by preparing and signing the release at the Port Committee Hearing on November 30, 1999.

The standard for determining the validity of a release is the "totality of circumstances," but the Court of Appeals [*197] for the Third Circuit has established the factors which a court may consider:

174 F. Supp. 2d 192, *197; 2000 U.S. Dist. LEXIS 20251, **10;
85 Fair Empl. Prac. Cas. (BNA) 101

relevant factors in reviewing the totality of circumstances include, but are not limited to, the following considerations: (1) the clarity and specificity of the release language; [**11] (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release: (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel: (6) whether there was an opportunity for negotiation of the terms of the Agreement: and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

Cirillo v. Arco Chem. Co., 862 F.2d 448, 451 (3d Cir. 1988), superseded by statute as stated in Long v. Sears Roebuck & Co., 105 F.3d 1529, 1539 (3d Cir. 1997) (holding that the factors established in Cirillo were no longer applicable to alleged waiver of ADEA rights because new legislation (the Older Workers Benefit Protection Act (OWBPA)) requires specific formalities when executing a release of liability under the ADEA).

A recent decision from the United States District Court for the District of New Jersey applied the Cirillo factors to a situation similar to [**12] this case. See Riddell v. Medical Inter-Ins. Exch., 18 F. Supp. 2d 468 (D.N.J. 1998). The plaintiff in Riddle was charging her former employer with violations of the NJLAD. The Court held that "the agreement itself could have made a finding of a valid waiver more likely if the Release language: (1) was more prominent: (2) identified the rights being waived; and (3) informed Riddell that she had time to deliberate and a right to consult with an attorney." Id. at 474.

In this case, an application of the Cirillo factors demonstrates that the release signed by Plaintiff does satisfy the "totality of circumstances" standard. Plaintiff signed a handwritten statement that he would drop his "beef" against BSM. Although the word "beef" is not legalistic, it is clear. The Court of Appeals for the Third Circuit has emphasized that clarity of the language is not as relevant as the comprehension of the terms by the person waiving their civil rights. See Coventry v. United States Steel Corp., 856 F.2d 514, 522-24 (3d Cir. 1988) (acknowledging the importance of a contract law analysis regarding the ambiguity of terms but requiring a more [**13] thorough analysis of the totality of circumstances involved in signing a waiver).

Therefore, the main issue in this case is whether plaintiff knew that his "beef" against BSM included charges of discrimination. Plaintiff initiated the Port Committee Hearing by filing a grievance with the SIU. (Mosley Affidavit. Exhibits B and C) Plaintiff's initial statement in the formal Beef Report states that he was discharged due to racial discrimination and unfair practice. In his subsequent statements to the SIU, plaintiff mentions his suspicions that Wattam was treating him disparately due to plaintiff's African American heritage. Accordingly, plaintiff lodged a grievance regarding discriminatory conduct on the Antares. For plaintiff to claim he did not know that dropping his "beef" against BSM included dropping racial discrimination charges is disingenuous. Defendants point out that plaintiff understood the significance of a Beef Report because he filed a similar report in 1980 to lodge a grievance involving a passport. (Defendants' Memorandum of Law in Further Support of Motion for Summary Judgment, [*198] Exhibit B). Accordingly, when plaintiff agreed to drop his "beef" against the defendants, [**14] he knowingly and voluntarily waived his right to bring subsequent litigation.

The Appellate Division of the New Jersey Superior Court has adopted the totality of the circumstances test established by the Court of Appeals for the Third Circuit in Coventry and Cirillo. See Swarts v. Sherwin-Williams Co., 244 N.J. Super. 170, 581 A.2d 1328 (App.Div.1990); see also Keelan v. Bell Communications Research, 289 N.J. Super. 531, 674 A.2d 603 (App.Div.1996). Consequently, the Court's analysis set forth above also shows that plaintiff executed a knowing and voluntary release of his claims under the NJLAD.

The plaintiff argues that he was not given the opportunity to consult with counsel. However, the record does not indicate that plaintiff was prohibited from seeking the aid of counsel. Dennis Metz and Steven Ruiz from the SIU were present to assist plaintiff. An

174 F. Supp. 2d 192, *198; 2000 U.S. Dist. LEXIS 20251, **14;
85 Fair Empl. Prac. Cas. (BNA) 101

examination of the official "Beef Report" reveals that the SIU representatives and plaintiff understood the association of the term "beef" with formal grievances against an employer.

Plaintiff next argues that he was unaware his Title VII claims were waived. However, plaintiff's subjective belief [**15] is insufficient to sustain his complaint. In Swarts, the court affirmed the trial court's grant of summary judgment for the defendant employer because the plaintiff was unable to establish a genuine issue of material fact. The plaintiff in Swarts had submitted a letter of grievance to his employer alleging forced retirement based on age discrimination. Subsequently, the plaintiff signed a release of any claims against his employer in consideration for payment of retirement benefits. In an affidavit filed later, the plaintiff claimed that he was unaware he was waiving his right to sue his employer for age discrimination. In affirming summary judgment, the court held that

> an opponent to a summary judgment motion cannot defeat the motion by raising a misguided subjective belief, without more, to create the existence of a genuine issue of material fact. In this instance, plaintiff seeks to establish a genuine issue of material fact by asserting in an "affidavit" he did not intend to waive his age discrimination rights when he signed the release. Yet, acceptance of that representation would allow defeat of the summary judgment motion based on a misguided subjective belief. [**16] At the time he signed the release, it is undisputed he had a full awareness of his age discrimination rights as evidenced by his prior assertion of his rights in his letter to the personnel department. What his unexpressed intention was is irrelevant. To draw any conclusion other than that he was fully aware of his age discrimination rights would belie logic and undermine the appropriateness of the summary judgment process as well as undermine the voluntary settlement process.

Swarts, 244 N.J. Super. at 178 (citing Cirillo, 862 F.2d at 452-53). Under Swarts, the plaintiff in this case cannot defeat summary judgment based on his mistaken belief that the release did not include allegations of racial discrimination. The evidence of plaintiff's racial discrimination accusations against defendants in his initial "Beef Report" cannot be overcome by the plaintiff's alleged subjective belief that they were not what they clearly were.

The defendants next attack the plaintiff's argument that the release was signed under duress. Plaintiff contends that he was forced to execute the release [*199] because he would not be able to obtain employment if the circumstances [**17] of his termination were categorized as wrongful discharge. Both the Court of Appeals for the Third Circuit and the New Jersey Appellate Division have held that "economic pressure alone is not enough to constitute duress rendering an otherwise valid release void." Keelan v. Bell Communications Research, 289 N.J. Super. 531, 548, 674 A.2d 603 (App. Div. 1996) (citing Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885 (3d Cir.1975); The Adonis, 38 F.2d 743, 744 (3d Cir.1930); Killian v. McCulloch, 873 F. Supp. 938, 943 (E.D.Pa.1995); Reed v. SmithKline Beckman Corp., 569 F. Supp. 672, 674 (E.D.Pa.1983)). In Keelan, the court rejected plaintiff's claim that he was under duress due to financial distress. See also Swarts, 244 N.J. Super. at 179 (rejecting plaintiff's assertion that he had to sign the release under the duress of "sign or starve"). Accordingly, plaintiff's argument that he was forced to sign the release lacks merit. In fact, plaintiff received negotiated consideration for signing the release because BSM altered the reason for termination from "with cause" to "mutual [**18] consent," and BSM agreed to drop any charges against the plaintiff.

B. Dismissal of Claims based on Maryland Law

The plaintiff's opposition brief admits that the mention of Maryland law in the complaint was misplaced. Therefore, the plaintiff agrees to the dismissal of Claim 7 in its entirety, as well as dismissal of Paragraph 58 of Claim 1. (Plaintiff's Brief at p. 29. P 1)

C. Dismissal of Claims under the NJLAD

The defendants argue that the plaintiff is not entitled to protection under the NJLAD because the plaintiff has no connection to New Jersey. The plaintiff responds that New Jersey has a governmental interest in protecting

174 F. Supp. 2d 192, *199; 2000 U.S. Dist. LEXIS 20251, **18;
85 Fair Empl. Prac. Cas. (BNA) 101

non-inhabitants from discriminatory conduct violating the NJLAD by a corporation which does business in New Jersey. According to the record, plaintiff is a citizen of Pennsylvania and defendant BSM is a Delaware corporation. The alleged discriminatory conduct occurred in Maryland. Therefore, it seems that the facts of this case suggest little reason to apply the NJLAD. However, the Court need not address defendants' argument regarding the applicability of the NJLAD because this Court has already decided to grant defendants' motion for [**19] summary judgment.

### D. Dismissal of Title VII Claims against Wattam

Defendants next argue that plaintiff's Title VII claim should be dismissed with respect to defendant Wattam because Title VII does not contemplate liability of individual employees. Defendants properly note that the Court of Appeals for the Third Circuit, like the majority of Circuits, has held that individual employees may not be held liable under Title VII. See Sheridan v. E.I. DuPont Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996), cert. denied, 521 U.S. 1129, 138 L. Ed. 2d 1031, 117 S. Ct. 2532 (1997) ("Congress did not intend to hold individual employees liable under Title VII."); Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996) (holding that individual employees cannot be held liable under Title VII). Plaintiff's argument that individuals may be held liable under Title VII when they act as "agents" of the employer is without merit. In Kohn v. AT&T Corp., 58 F. Supp. 2d 393 (D.N.J. 1999), this Court vigorously rejected that very argument, and instead, citing the holdings of Sheridan and Dici, noted that the [**20] law in the [*200] Third Circuit is "settled" and "dispositive" in foreclosing any possibility of individual liability under Title VII. Kohn at 421; see also Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173 (3d Cir. 1997). Thus, plaintiff's Title VII claims against individual defendant Wattam must be dismissed.

### E. Plaintiff's Failure to Exhaust Administrative Remedies

The defendants argue that the plaintiff did not exhaust all the administrative remedies available because the plaintiff omitted information when he filed his complaint with the EEOC. First, the defendants claim that the plaintiff failed to mention BSM in the EEOC complaint so the EEOC has only investigated Wattam's role in the case. Second, the defendants claim that the plaintiff's hostile work environment claim is barred

because plaintiff did not mention the charge of hostile work environment in his filings with the EEOC.

In Gooding v. Warner-Lambert, 744 F.2d 354 (3d Cir. 1984), the Court of Appeals for the Third Circuit noted that the issuance of an EEOC right-to-sue letter is not a jurisdictional prerequisite to a Title VII claim. Gooding, 744 F.2d at 358. [**21] Indeed, the Court of Appeals for the Third Circuit has held that "the failure to obtain a right-to-sue letter. . . is curable at any point during the pendency of the action" because the court will not "penalize the appellants" for the EEOC's failure to follow up on discharge charges or an attorney's failure to obtain right-to-sue letters. Anjelino v. New York Times Co., 200 F.3d 73, 96 (3d Cir. 1999); see also Gooding, 744 F.2d at 357-59 (eschewing "highly technical pleading rules, which only serve to trap the unwary practitioner." in favor of notice pleading, and reversing dismissal of Title VII action where an EEOC right-to-sue letter issued after complaint was filed); Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976) (holding that "the parameters of a civil action in the District Court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charges of discrimination").

Accordingly, the holding in Anjelino runs contrary to the defendants' argument because the plaintiff could amend his EEOC complaint and cure the alleged failure to exhaust administrative remedies. [**22] However, the Court need not resolve this issue because it has dismissed plaintiff's claims of wrongful discharge and hostile work environment based on the plaintiff's release.

### F. Dismissal of Contract Claims

Defendants move to dismiss the Eighth Count of plaintiff's complaint on the grounds that the common law causes of action for breach of contract and tortious interference are "subsumed" by the LAD. Defendants contend that these claims, which stem from the alleged racial discrimination, are duplicative of the LAD and should be dismissed. Upon careful consideration of the statutory language and case law, the Court disagrees.

The New Jersey state courts and this Court have frequently held that the LAD bars common law discrimination claims that are duplicative of the LAD. See, e.g., Catalane v. Gilian Instrument Corp., 271 N.J. Super. 476, 492, 638 A.2d 1341 (App. Div. 1994) (holding that supplementary common law causes of

174 F. Supp. 2d 192, *200; 2000 U.S. Dist. LEXIS 20251, **22;
85 Fair Empl. Prac. Cas. (BNA) 101

action may not go to the jury when a statutory remedy under the LAD exists); DeCapua v. Bell Atlantic - New Jersey, Inc., 313 N.J. Super. 110, 128, 712 A.2d 725 (Law Div. 1998) ("Because plaintiff's common-law breach of [**23] contract claim duplicates his statutory claim under New Jersey's LAD, it is barred."); Mardini v. Viking Freight, Inc., 92 F. Supp. 2d 378, 382-385 (D.N.J. [*201] 1999) (dismissing a wrongful termination claim which involved the same elements of discrimination as the LAD claim); DeJoy v. Comcast Communications, Inc., 941 F. Supp. 468, 476 (D.N.J. 1996) (finding plaintiff's common law claim preempted by the LAD where plaintiff provided no information showing his common law claim was "different or broader" than his LAD claim).

However, it is clear from the case law and a review of the LAD itself that the LAD does not necessarily bar all common law causes of action that might be implicated in an LAD action. In Shaner v. Horizon Bancorp, 116 N.J. 433, 454, 561 A.2d 1130 (1989), the New Jersey Supreme Court noted that "a plaintiff in appropriate circumstances could pursue an independent action. . . to vindicate particular interests in addition to or aside from those sought to be protected by a LAD action." Shaner, 116 N.J. at 454: see also Dale v. Boy Scouts of America, 308 N.J. Super. 516, 543, 706 A.2d 270 (App. Div. 1998) [**24] (internal citations omitted). aff'd 160 N.J. 562, 734 A.2d 1196 (1999), rev'd on other grounds, 530 U.S. 640, 120 S. Ct. 2446, 147 L. Ed. 2d 554 (2000). In the policy declaration accompanying the act. the New Jersey Legislature made clear that it did not intend that the LAD would preempt other causes of action: [The LAD] shall be liberally construed in combination with other protections available under the laws of this State." N.J. STAT. ANN. § 10:5-3: see also, N.J. STAT. ANN. § 10:5-13 ("All remedies available in common law tort actions shall be available to prevailing plaintiffs."). Furthermore. § 10:5-27 of the LAD states:

> Nothing herein contained shall bar, exclude, or otherwise affect any right or action, civil or criminal, which may exist independently of any right to redress against or specific relief from any unlawful employment practice or unlawful discrimination.

N.J. STAT. ANN. § 10:5-27. Given the statutory language, this Court finds that the legislature intended that the LAD would supplement, rather than preempt, other causes of action. Therefore. plaintiff's common law claims may not be dismissed.

1. Breach of Contract

Because plaintiff's common law claims [**25] are not preempted, the Court next considers defendants' argument that the Eighth Count of plaintiff's complaint should be dismissed because plaintiff has failed to allege the existence of any third party protections under a valid contract. The complaint alleges that defendant BSM breached its contract with the United States by failing to adhere to its requirement that BSM observe the civil rights laws of the United States. New Jersey and Maryland. and that plaintiff was a third-party beneficiary of that contract. Since it is well-known that parties contracting with the United States and its agencies are required to observe civil rights laws applicable to performance of the contract, defendants' motion to dismiss the Eighth Count will be denied. n1

> n1 It does not appear that defendants seek summary judgment on the Eighth Count based on the release.

2. Tortious Interference

The defendants also move to dismiss the Eighth Count of plaintiff's complaint for tortious interference with the contract between defendants [**26] and the United States Naval Forces. Defendants argue that plaintiff cannot sustain a tortious interference with contract claim because plaintiff has failed to identify any of the [*202] defendants as third parties to the contract. Consequently, defendants contend that plaintiff has failed to state a claim for relief for the Eighth Count in plaintiff's complaint.

New Jersey courts have held that it is "'fundamental' to a cause of action for tortious interference. . . that the claim be directed against defendants who are not parties to the relationship." Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 752, 563 A.2d 31 (1989). Here, defendant BSM. as plaintiff's employer, was clearly a party to the alleged employment contract with the United States. As a result. BSM cannot be held liable for tortious interference with its own contract. Custom Communications Eng'g v. E.F. Johnson Co., 269

174 F. Supp. 2d 192, *202; 2000 U.S. Dist. LEXIS 20251, **26;
85 Fair Empl. Prac. Cas. (BNA) 101

N.J. Super. 531, 543, 636 A.2d 80 (App. Div. 1993) (stating that a tortious interference claim must be directed against persons who were not parties to a contract); Kopp v. United Technologies, Inc., 223 N.J. Super. 548, 539 A.2d 309 (App. Div. 1988) [**27] ("A party cannot be guilty of inducing the breach of its own contract").

Claims for tortious interference with a contract brought by an employee against a supervisor (such as Wattam) acting in the course of his employment must be dismissed. Horvath v. Rimtec Corporation, 2000 U.S. Dist. LEXIS 10128, 2000 WL 1030357, *9 (D.N.J. July 19, 2000). "Only when an employee asserts that an officer or agent of corporation (sic) acted outside the scope of his employment and/or for his own personal gain may the employee go forward with his claim for tortious interference." Id. Under New Jersey common law, "to be within the scope of employment, the employee's behavior must be 'actuated, at least in part. by a purpose to serve the master.'" Di Cosala v. Kay, 91 N.J. 159, 169, 450 A.2d 508 (1982) (quoting Restatement (Second) of Agency § 228 (1957)). Accordingly, plaintiff's allegation that Wattam tortiously interfered with the contract between BSM and the United States

must be dismissed. However, the Court has denied defendants' motion to dismiss the Eighth Count as to plaintiff's claim that BSM breached its contract with the United States of which he is a third-party beneficiary.

Accordingly, [**28] **IT IS** on this 27Th day of December, 2000 **ORDERED** that the defendants' motion for summary judgment against the plaintiff on Counts One through Six. which are subject to the plaintiff's release, is granted: and it is further

**ORDERED** that the defendants' motion to dismiss the Seventh Count of plaintiff's complaint, alleging violations of Maryland law. is granted: and it is further

**ORDERED** that defendants' motion to dismiss the Eighth Count of plaintiff's complaint. alleging breach of contract of which he is a third-party beneficiary, is denied.

John C. Lifland

United States District Judge